IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIE B. COLEMAN

   Petitioner,      No. 2:09-cv-0020 DAD P

  vs.

GARY SWARTHOUT

   Respondent.     ORDER

_____/

   Petitioner is a state prisoner proceeding through appointed counsel with an application for writ of habeas corpus under 28 U.S.C. § 2254. Therein petitioner challenges a 2006 judgment of conviction entered against him in the Solano County Superior Court on charges of second degree robbery (Cal. Penal Code § 211), assault by force likely to produce great bodily injury (Cal. Penal Code § 245(a)(1)), and an enhancement for personal infliction of great bodily injury (Cal. Penal Code § 12022.7(a)). The parties have consented to Magistrate Judge jurisdiction over this action under 28 U.S.C. § 636(c).

I. Background

   On appeal from his conviction in state court, petitioner claimed that the evidence introduced into evidence at his trial was insufficient to support his conviction on all of the charges against him and that his right to a fair trial was violated by jury misconduct. (Answer

(Doc. No. 11), Ex. 1; Clerk's Transcript on Appeal (hereinafter CT) at 248.)  The California Court of Appeal for the First Appellate District affirmed the judgment of conviction on June 25, 2008.  (Answer (Doc. No. 11), Ex. 4.)  The state appellate court's opinion provides the following factual summary of the case:

> On September 16, 2003, at about 5:30 in the afternoon, Keith Vershay was driving along Pintail Drive in Suisun City, on his way home from his work at Travis Air Force Base.  Because of the heat he had lowered the vehicle's windows on both sides.  An African-American male stepped in front of the vehicle, and Vershay "slammed on the brakes."  The man approached the vehicle, leaned through the open front passenger window, and made some remark as if accusing Vershay of trying to hit him.  Vershay told the man he should "stay out of the road."  The man then "took a jab" at Vershay.  At that same moment Vershay felt a pain in the back of his head and "blacked out."
>
> Other witnesses testified that several young adult African-American males converged on the driver side of the stopped vehicle, pulled Vershay out onto the street, and began beating and kicking Vershay's face and head.  Two witnesses, attempting to intervene, began shouting at the males, who then ran off.
>
> Vershay's injuries, in addition to surface lacerations, bruising, and a swollen eye, included seven facial fractures and two breaks in his lower jaw.  Because of the fractures both cheekbones were "caved in."  The injuries required some four hours of surgery to set and wire his jaw and restore the cheekbones to their proper position.  Ultimately Vershay was left with scarring and a loss of muscle control in lower right side of his face.
>
> Vershay testified that his basketball shoes had been taken.  Another witness stated that he saw one of the attackers remove something from a wallet he had taken from Vershay's clothing, and toss the wallet onto the street before running from the scene.
>
> An information filed January 6, 2004, charged defendant as one of those who had attacked Vershay.  It alleged a felony violation of section 211 (second degree robbery), and a felony violation of section 245, subdivision (a)(1) (assault by means of force likely to produce great bodily injury).  The information also included an enhancement allegation under section 12022.7, subdivision (a), to the effect that defendant personally inflicted great bodily injury in his commission of the robbery and assault.  On January 12, 2004, defendant entered a plea of not guilty.

/////

> Defendant's jury trial commenced over two years later, in March 2006. On March 20, 2006, the jury returned a verdict that found defendant guilty of both counts and found true the enhancement allegation.
>
> Defendant filed a motion for new trial on May 3, 2006, on the ground of juror misconduct. At the sentencing hearing, held on June 13, 2006, the trial court denied defendant's motion. The court went on to impose an upper term of five years imprisonment for defendant's conviction under section 211 and a consecutive term of three years based on the enhancement allegation under section 12022.7. The court stayed imposition of sentence for defendant's conviction under section 245, pursuant to section 654.[1] Defendant filed a notice of appeal the following day. (§ 1237, subd .(a).)

(Id. at 2-3.)

On August 9, 2007, petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, claiming that his trial attorney rendered ineffective assistance. (Answer (Doc. No. 11), Ex. 5.) The state appellate court denied that petition in a reasoned decision dated June 26, 2008. (Id., Ex. 6.) Petitioner also filed two petitions for review in the California Supreme Court, both of which were summarily denied. (Id., Ex. 7.)

A. Earlier proceedings in federal court

Petitioner originally sought relief from this court on the following grounds: (1) his right to a fair trial and impartial jury was violated when some of the jurors discussed petitioner's decision not to testify and when one of the jurors discussed his own professional experience in law enforcement with photographic lineups;[2] (2) the evidence introduced at his trial was insufficient to support petitioner's conviction on the charges against him; (3) the trial court's imposition of the upper term sentence violated petitioner's right to a jury trial; and (4)

---

[1] "At the same time, the court imposed an additional consecutive sentence of two years eight months imprisonment, based on a prior conviction and enhancement finding as to which probation had been revoked." (Originally footnote 3 to the opinion on petitioner's direct appeal (See Answer (Doc. No. 11), Ex. 4 at 3).)

[2] Petitioner was identified as an assailant in the attack twice – once by Keith Vershay, the victim, and once by Laura Samuels, an eyewitness who intervened to stop the assault.

petitioner's trial counsel rendered ineffective assistance.  (Petition (Doc. No. 1).)  On December 3, 2012, this court dismissed all claims except petitioner's allegation that he received ineffective assistance of counsel (IAC).  (See Doc No. 28.) The remaining ineffective assistance of counsel claim focuses on the decision by petitioner's trial counsel, attorney Tim Pori, to tell the jury in his opening statement that they would hear from an alibi witness and his decision later not to call that witness to testify.  The California Court of Appeal rejected this ineffective assistance of counsel claim, holding that attorney Pori had made a "tactical decision" – a critical factual finding because it triggers the "virtually unchallengeable" presumption that a lawyer performed reasonably.  See Strickland v. Washington, 466 U.S. 668, 690 (1984).[3]

The California Court of Appeal reached its conclusion in spite of the most significant piece of evidence before it:  a sworn declaration by Pori stating that, in fact, his failure to call an alibi witness after promising one to the jury in his opening statement was a "mistake" in part because he knew ahead of trial that the witness might present credibility problems if he testified.  (Answer, Ex. A to Lodged Ex. 5 (Doc. No. 11-2), at ¶ 7.)  Pori further specifically stated in his declaration that

> [s]pecifically detailing alibi evidence in my opening statement before hearing the prosecution's case was not the result of a tactical decision.  I simply did not weigh the advantages against the disadvantages of promising the alibi evidence before hearing the prosecution's case.

(Id. at ¶ 9 (emphasis added).)  There was no evidence in the state court record suggesting that attorney Pori had weighed the advantages against the disadvantages of promising an alibi witness in his opening statement, nor did the California Court of Appeal grant an evidentiary hearing on any of petitioner's claims.  Rather, attorney Pori's clear, sworn disavowal of having made a tactical decision stood alone.

---

[3] Indeed, the California Court of Appeal dismissed petitioner's ineffective assistance claim by invoking "the 'highly deferential' standard of Strickland." (Pet. (Doc. No. 1), Appendix B at 2.)

After a full round of briefing, including supplemental briefing on a discrete procedural issue, this court held that "from the basis of no evidence, the state appellate court construed attorney Pori's conduct to be the product of a 'tactical decision,' a characterization exactly opposite from attorney Pori's uncontradicted, sworn assertion, and it did so without a hearing." (Order filed Dec. 3, 2012 (Doc. No. 28) at 44.) On that ground, this court concluded that the state appellate court made an unreasonable determination of fact and that 28 U.S.C. § 2254(d)(2) therefore applied to the IAC claim, rendering de novo review appropriate. (Id.); see Maxwell v. Roe, 628 F.3d 486, 494-95 (9th Cir.2010) (stating that "when a state court adjudication is based on an antecedent unreasonable determination of fact, we proceed to consider the petitioner's related claim de novo").

Before rendering a decision on the merits of the pending claim, however, this court concluded that it "should, indeed can only, be resolved after full development of the facts that informed trial counsel's decision to promise the alibi witness in his opening statement to the jury despite known weaknesses in that witness' credibility. The primary source of that evidence will be attorney Pori's live testimony." (Order filed Dec. 3, 2012 (Doc. No. 28) at 51.) The evidentiary hearing took place on February 21, 2013, with counsel for both sides present and petitioner's trial counsel Tim Pori giving live testimony.

II. Evidentiary hearing

On the witness stand at the evidentiary before this court, Pori testified that in his fifteen years of practicing law, which included approximately fifty-three jury trials, he had never waived the right to make an opening statement before the prosecution begins its presentation of evidence. (Evidentiary Hearing Transcript (Doc. No. 33) (hereinafter "Tr.") at 9-10.) He said that "in my experience it is a terrible mistake to waive or – waive opening statement or to pull your punches in opening[.]" (Id. at 10.) His practice, Pori said, is "to make as strong an opening statement as I can, and it is also my practice to tell the jury about all the evidence that I expect to produce at trial, and all the witnesses that I will call[.]" (Id. at 9.) Attorney Pori testified that in

5

this case, "I was very concerned about the state of the evidence, and I was also concerned that there was going to be in-court identifications of my client. And so I felt it was necessary to give as strong an opening statement as I possibly could using every available piece of evidence at my disposal." (Id.) In following this practice, he "did not consider not telling the jury about Mr. Thompson [the alibi witness] . . . . [I]t was not a tactical decision . . . I did not consider it." (Id. at 11.) In this regard, Pori clearly believed that Thompson was going to testify when he made his opening statement. (Id. at 13.) See also id. at 17 ("I intended to use him at the time I made the opening statement.")

Pori explained in his testimony that "as the trial progressed there was, in fact, no in-court identification. In fact, none of the witnesses could look Willie Coleman in the eye and say, that's the man who did. . . . [T]he case turned out to be far weaker in trial than I thought it was when I read the documents. It looked much stronger than it actually was when the witness testimony came out."[4] (Id. at 14.) After the state's witnesses equivocated at trial on their identification of the defendant as the assailant, attorney Pori called an expert witness, Dr. Robert Shomer, to testify on "factors involved in perception, memory and eyewitness identification.[.]" (RT Vol. 2 at 249.) Pori stated that after Dr. Shomer testified at trial, he told Pori, "don't put on an alibi witness and . . . ruin all of my testimony. I think that's a mistake. He said, I've seen lots of cases where if you call an alibi witness and it turns out, you know, that the alibi witness is not believed, then that completely ruins your mistaken identity defense[.]" (Tr. at 15.) Attorney Pori also testified that the court clerk and the bailiffs at petitioner's trial expressed their opinion to him during breaks that he was winning the case. (Id.)

---

[4] This court notes that it appears attorney Pori was being slightly modest here: on cross-examination he prompted the victim to admit that when he saw the defendant's picture in a photo lineup he was not sure of if the defendant was the assailant. Then Pori managed to get the only eyewitness not a party to the case to agree in open court that "[she] can't remember today whether this was the man who was at the crime scene[.]" (See Order filed Dec. 3, 2012 (Doc. No. 28) at 29-30 (quoting Reporter's Trial Transcript (RT) Vol. [2 at 54, 177].) As the undersigned commented at the evidentiary hearing in this federal habeas action, "[t]hat must have been . . . one of those golden moments . . . those are the ones you don't forget." (Tr. 33.)

These favorable turns gave Pori, in his mind, "a much better opinion of the case . . . during the trial than I did in opening statement. I felt more confident about it, and I felt I had a good case. . . . I felt that I had a good reasonable doubt case given the circumstances.

> And so based on that – so we had Dr. Shomer, we had the weak identification, and then my client and I discussed the possibility of testimony and he didn't testify, and his testimony would've corroborated Mr. Thompson's. And thirdly, to be quite candid, the testimony of Mr. Thompson did have some problems with it, and I knew that when I made my opening statement. I knew it wasn't – this guy was not very good with corroboration because he had problems with his alibi.

(Id. at 15-16.) Attorney Pori conceded at the evidentiary hearing that the compatibility (or lack of it) of Dr. Shomer's and Thompson's testimony was "something [I] could have talked to Shomer before trial about[,] but I didn't." (Id. at 20.) He also agreed that "if the prosecution case had been much stronger, if the two eyewitnesses had pointed directly at the defendant and said 'That's the man[,'" he would have called Thompson to testify as to petitioner's alibi. (Id. at 28).

At the evidentiary hearing before this court, counsel for the respondent helped attorney Pori sum up his thinking during the trial as follows:

> Q. . . . At the conclusion of the prosecution case, you made it clear that you thought the alibi could be more harmful than helpful, is that correct?
>
> A. Yes. I think that's –
>
> Q. And that's why you didn't call Mr. Thompson?
>
> A. Yes.
>
> Q. And you thought that the prosecution case was possibly not strong enough to support a conviction?
>
> A. Yes.
>
> Q. And you didn't want to endanger that with a weak alibi?
>
> A. Yes.

/////

(Id. at 29-30.)

III.  Analysis

The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  First,[5] a petitioner claiming that he received ineffective assistance of counsel must show that, considering all the circumstances, his criminal defense counsel's performance fell below an objective standard of reasonableness.  Strickland, 466 U.S. at 687-88.  This element requires the petitioner to identify the acts or omissions that fell below that standard; then the court must determine whether, in light of all the circumstances, those acts or omissions were outside the wide range of professionally competent assistance as defined by professional norms at the time.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  Second, the petitioner must establish that he was prejudiced by counsel's deficient performance.  Strickland, 466 U.S. at 693-94.  Prejudice exists if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).

The burden of proving that counsel's performance fell below an objectively reasonable standard of effectiveness is on the party making the claim.  See Cheney v. Washington, 614 F.3d 987, 995 (9th Cir.2010).

/////

---

[5] The usual analysis in assessing a Strickland claim proceeds by inquiring into the reasonableness of counsel's performance first and the prejudice suffered by the claimant second. However, the reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

Ordinarily, "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'" Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689). There is also a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions [he] made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689). However, as this court discussed in detail in its previous order concluding that the state court had made an unreasonable determination of fact in this case, Strickland deference pre-supposes that defense counsel's conduct was the result of a tactical or strategic decision.[6] (See Order filed Dec. 3, 2012 (Doc. No. 28) at 35-38.) There, the court explained why this pre-supposition was the critical factual predicate of petitioner's ineffective assistance of counsel claim in this case which the court would, once it hurdled the bar set by § 2254(d), be required to decide:

> . . . Simply put, where there was no decision, there could not have been any reasoned professional judgment, and thus there should be no deference on habeas review. See Strickland, 466 U.S. at 691 (stating that it is necessary to "apply[] a heavy measure of deference to counsel's judgment") (emphasis added); Wiggins [v. Smith, 539 U.S. 510, 526 (2003)], (explaining that "[t]he record of actual sentencing proceedings underscores the unreasonableness of counsel's conduct by suggesting that their failure to investigate thoroughly resulted from inattention, not reasoned strategic judgment") (emphasis added).
>
> "Although the reasonableness of counsel's decision is best described as a question of law, whether [counsel's] actions were . . . 'tactical' is a question of fact." Edwards [v. Lamarque, 475 F.3d 1121, 1126 (9th Cir.2007)]. Indeed, according to Strickland, a claim of ineffective assistance of counsel presents a mixed question of law and fact. See Strickland, 466 U.S. at 698. Furthermore, "a federal court reviewing a state court conclusion on a mixed issue involving questions both of fact and law must first

---

[6] "Tactical decisions of trial counsel deserve deference when: (1) counsel in fact bases trial conduct on strategic considerations; (2) counsel makes an informed decision based upon investigation; and (3) the decision appears reasonable under the circumstances." Carpenter v. Kernan, No. C 06-7408 JSW (PR), 2009 WL 3681684, at *16 (N.D. Cal., Nov. 2, 2009) (emphasis added). See also Wood v. Allen, 558 U.S. 290, 308 (2010) (Stevens, J., dissenting) (citing Wiggins and Strickland) (commenting that "[a]lthough we afford deference to counsel's strategic decisions, for this deference to apply there must be some evidence that the decision was just that: strategic").

> separate the legal conclusions from the factual determinations that underlie it." Lambert v. Blodgett, 393 F.3d 943, 978-79 (9th Cir.2004). So, while the inquiry into whether Pori did, in fact, make a "tactical" decision is not by itself dispositive of petitioner's claim, the resolution of that issue determines a critical factual predicate to the appropriate legal analysis – i.e., whether any court, state or federal, must give the usual heightened Strickland deference to Pori's promise of alibi evidence to the jury when he did not know if he would keep it.

(Id. at 37-38.)

### A. Counsel's Decision to Mention Alibi Evidence in His Opening Statement

"[A] strategic decision is a 'conscious, reasonably informed decision made by an attorney with an eye to benefitting his client.'" Cox v. Donnelly, 387 F.3d 193, 198 (2nd Cir. 2004) (quoting Pavel v. Hollins, 261 F.3d 210, 218 (2nd Cir. 2001)). Attorney Pori made it clear at the evidentiary hearing before this court that his steadfast practice through his fifteen years of defending clients accused of crimes was not just to opt for an opening statement in every case but to include in his opening every piece of favorable evidence he had at his disposal. He was just as clear that as far as he was concerned this case presented no reason to waver from that practice and that, therefore, he "did not consider not telling the jury about Mr. Thompson. . . . [I]t was not a tactical decision. . . I did not consider it." (Tr. 11.) Indeed attorney Pori was adamant at the evidentiary hearing that he made no conscious choice to mention the alibi witness in his opening statement despite knowing about the witness' potential credibility problems well ahead of trial.

Of course this court, for reasons it discussed in its previous opinion, is not bound by an attorney's own representation that something he did was or was not "tactical." (See Order filed Dec. 3, 2012 (Doc. No. 28) at 39-43) (discussing the credibility problems sometimes presented when "former counsel extends his zealous defense so far as to 'fall on his sword' and confess a Strickland violation that would, if proven, benefit his former client on collateral review"). That said, this court finds attorney Pori's explanation provided at the evidentiary hearing that he did not consider omitting Thompson from his opening statement and that he fully

intended to call Thompson when he told the jury they would hear an alibi witness to be fully credible.

The arguable gray area is in deciding what effect to give attorney Pori's testimony that he <u>always</u> mentions every piece of evidence favorable to the defense he is aware of in his opening statement. As one court explained in an ineffective assistance of counsel case in which defense counsel elected not to give an opening statement,

> [w]hile there are cases whether there is good reason not to give an opening statement, it is difficult to label the decision not to give one in this case a tactical decision since [defense counsel] testified that he has a policy of <u>never</u> giving an opening statement. <u>Tactical and strategic decisions are decisions based on the specific facts of a given case; general policies against ... making opening statements are not policies based on strategy</u>[.]

<u>Crisp v. Duckworth</u>, 743 F.2d 580, 587 (7th Cir.1984) (emphasis added). Indeed there is an instructive body of case law dealing with the first characteristic of a strategic or tactical decision as defined by the Second Circuit: "a <u>conscious</u>, reasonably informed decision made by an attorney with an eye to benefitting his client." <u>Pavel</u>, 261 F.3d at 218 (emphasis added); <u>see id.</u> at n. 11 (collecting cases). For example, in <u>Loyd v. Whitley</u>, 977 F.2d 149, 159 (5th Cir.1992), the court focused on "[t]he crucial distinction between strategic judgment calls and plain omission" and found no evidence to label the decision at issue in that case a "strategic" one. "Counsel did not <u>choose</u>, strategically or otherwise, to pursue one line of defense over another." <u>Id.</u> In another Fifth Circuit case, the court ruled that a state habeas court had no reasonable basis for its "implicit fact finding that counsel made a strategic decision to exclude exculpatory portions of the confession" because counsel had testified after trial that "he had no idea why the exculpatory language was excluded." <u>Moore v. Johnson</u>, 194 F.3d 586, 610 (5th Cir.1999).

During an exchange with the undersigned at the evidentiary hearing in this case, attorney Pori made a distinction similar to the one made in <u>Crisp v. Duckworth</u>, above. In this regard petitioner's trial counsel said, "in my mind there's a difference between a tactical decision and something that's a habit and custom[.] . . . [I]t's just my policy, my practice, my belief"

11

always to be as comprehensive as possible in an opening statement with the positive evidence he has on his side. (Tr. at 53.) However the undersigned, in the same exchange, echoed Moore to contradistinguish what attorney Pori did here and what a lawyer in another case might do having "no idea why": "[S]omebody in another case could come up and say . . . I was in the well, and all of a sudden I started to make all these promises [in opening statement]. There was no thought, no reason. . . . I just started blathering and I don't know what happened." (Id. at 54.) It was very clear from attorney Pori's testimony at the evidentiary hearing that he did not give anything like such an unthinking performance in this case when he included a promise of alibi evidence in his opening statement to the jury.

        Having considered attorney Pori's detailed evidentiary hearing testimony about his approach to the opening statement, the court finds that he did not make a distinctly "conscious" tactical choice of the kind defined in Pavel and Duckworth, nor did he have "no idea" why he made his opening statement promise of an alibi witness in the thoughtless sense condemned by the court in Moore. Rather, attorney Pori's thought process was somewhere in between. However, the important point is it was not the result of unprepared confusion, negligent omission or any other failing that could impugn his effectiveness as constitutionally inadequate. As the undersigned observed at the evidentiary hearing, addressing Pori directly, "it sounds [like] you do, in fact, it may be a consistent practice . . . but you always make a tactical decision to make as strong of an opening statement . . . <u>as you feel you are justified in making at the time it comes to give it</u>." (Id. at 53). Indeed, it is critical that attorney Pori testified, and that this court having observed that live testimony now wholly believes, that when he promised Thompson as an alibi witness to petitioner's jury he intended to call him at trial. It is just as critical that he was reasonably justified in believing so. Therefore, although attorney Pori's decision to mention Thompson in his opening statement was not a tactical decision in the purest sense of a conscious choice between alternatives, it was "the sort of conscious, reasonably

/////

informed[7] decision made by an attorney with an eye to benefitting his client that the federal courts have denominated 'strategic' and been especially reluctant to disturb." Pavel, 261 F.3d at 218.

     This court is bound by Strickland not to second-guess attorney Pori's tactical decision to mention Thompson as an alibi witness in his opening despite the possibility that he could later decide not call to him and despite knowing the credibility problems Thompson could present on the witness stand. The promise of an alibi witness by petitioner's trial counsel was not, by itself and under the circumstances, deficient performance under the Sixth Amendment.

     B.   Counsel's Decision Not to Call Alibi Witness Despite the Opening Statement

     The court also does not find attorney Pori's decision not to call Thompson after the prosecution rested its case to have been unreasonable. That decision was, first of all, clearly a tactical choice, to which deference is due under Strickland. "As a general rule, courts presume that counsel's decision not to present promised evidence is reasonable, though the court must view the decision 'in light of all the circumstances.'" Nguyen v. Cate, No. C 09-03980 JSW, 2012 WL 850609, at *8 (N.D. Cal. Mar. 13, 2012). Furthermore, there is no rule that the failure of counsel to present evidence promised in an opening statement is ineffective assistance of counsel per se. See Luna v. Gibson, No. EDCV 12-19 PA (FFM), 2012 WL 7807308, at *7 (C.D. Cal. Nov. 26, 2012). However, as the court discussed in its previous order,[8] some of the cases that have analyzed similar allegations under Strickland have produced grave pronouncements that, even giving the proper deference, failure to call an important witness after promising one can be "indefensible." Ouber v. Guarino, 293 F.3d 19, 28 (1st Cir. 2002). In this

---

[7] Even if the court decided that attorney Pori had not been in any way "tactical" in his conduct and thus withheld all deference in reviewing his decision to include mention of the alibi in his opening statement, his conduct would still meet the ultimate threshold of Strickland's first prong, which requires a lawyer to perform reasonably under the circumstances and in light of prevailing professional norms.

[8] See Order filed Dec. 3, 2012 (Doc. No. 28) at 47-51.

regard, one court has summarized the adverse effect undelivered promises can have on a defendant's case and why they may violate the Sixth Amendment as follows:

> Making such promises and then abandoning them for reasons that were apparent at the time the promises were made cannot be described as legitimate trial strategy. Promising a particular type of testimony creates an expectation in the minds of jurors, and when defense counsel without explanation fails to keep that promise, the jury may well infer that the testimony would have been adverse to his client and may also question the attorney's credibility. In no sense does it serve the defendant's interests.

United State ex rel. Hampton v. Leibach, 347 F.3d 219, 259 (7th Cir.2003). One of the leading cases on such broken promises counsels that "little is more damaging than to fail to produce important evidence that had been promised in an opening." Anderson v. Butler, 858 F.2d 16, 17 (1st Cir.1988).

Still, the outcomes of cases that consider the effects of broken promises are, as Strickland requires, heavily fact-dependent and therefore varied. In United States v. Crawford, 680 F. Supp.2d 1177, 1195-1202 (E.D. Cal.2009), the court culled from some of those cases the following factors to consider in deciding whether counsel was ineffective: (1) if the promise was "dramatic;" (2) whether the evidence omitted would have been significant; (3) whether the promise was general or specific; (4) whether the testimony was elicited through other means; and (5) whether the time lapse between the promise in opening statement and submission of the case to the jury was relatively short or long.[9] Similarly, in Madrigal v. Yates, 662 F. Supp.2d 1162 (C.D. Cal.2009), the court discussed the decisions in Ouber and Leibach and distilled a common factor that Strickland violations share in such "broken promises" cases:

> [W]hen the failure to present the promised testimony cannot be chalked up to unforseeable events, as the Court has determined is the case here, the attorney's promise may be unreasonable, for "little is more damaging than to fail to produce important evidence that had been promised in an opening."

---

[9] Crawford addressed an ineffective assistance of counsel claim in a motion to vacate, set aside or correct a federal sentence brought pursuant to 28 U.S.C. § 2255.

14

Id. at 1184 (quoting Anderson, 858 F.2d at 17).

    First, in this case nothing indicates that attorney Pori's mention of potential alibi witness Thompson was particularly dramatic. Instead, petitioner's trial counsel Pori plainly stated the defense's primary theory of the case in the first sentence of his opening, that "[t]he evidence is going to show that this is a case of mistaken identity." (RT Vol. 1 at 115.) Defense counsel summarized the flaws in key eyewitnesses' testimony, described numerous problems with the identification and investigation procedures conducted in the case and laid the groundwork for psychological expert testimony on the fallibility of eyewitnesses' recollections in criminal cases. (Id. at 115-119.) Attorney Pori's reference to Thompson as an alibi witness came after that discussion, and it was limited to two brief sentences of the opening. (Id. at 119.) After mentioning Thompson, defense counsel returned to the theme of inconsistencies in the eyewitness' testimony before wrapping up his opening statement. (Id. at 119-20.) True, he had been somewhat specific by giving the jury the promised alibi witness a name and briefly summarizing his relationship to the defendant. Even that relatively low level of specificity likely made the promise more memorable. On the whole, however, the court does not see the promise made in this case as being of such thundering import in the opening that breaking it would establish a constitutionally deficient performance on the part of defense counsel. See Anderson, 858 F.2d at 17 (stating that "we consider the totality of the opening and the failure to follow through").

    The court cannot gainsay that the omitted alibi testimony was significant. Of course it was – or would have been if presented and not effectively impeached on cross-examination, a possibility of which attorney Pori was understandably wary. In that regard, the decision by petitioner's trial counsel not to call Thompson is difficult to characterize as unreasonable, especially in light of the strides defense counsel made in cross-examining both of the prosecution's key eyewitnesses. Indeed, in Crawford's terms, petitioner's counsel successfully elicited evidence of mistaken identity through other means, not the least of which

was an outright admission by the only non-party eyewitness that she could not identify the defendant sitting in front of her as the assailant. In this court's view, if anything at trial was dramatic, surely it was that. Attorney Pori's assessment that he had created reasonable doubt in cross-examining the prosecution's witnesses and in presenting very favorable testimony from Dr. Shomer – the two main factors that he said weighed against calling the potentially problematic alibi witness – thus has ample support in the record. Attorney Pori further testified at the evidentiary hearing, and this court finds that testimony fully credible, that he discussed with Dr. Shomer the possibly "ruinous" effect that a poor alibi witness might have on Shomer's seemingly quite effective expert testimony.[10] Trial counsel's decision not to "endanger" those gains, as counsel for respondent put it at the evidentiary hearing, was clearly informed and reasonable.

Quite a different situation was presented in Madrigal, where the defense attorney's performance was found to be deficient because his decision to renege on the promise that the defendant would testify could not be "chalked up to unforeseeable events . . . that would warrant . . . changes in previously announced trial strategies." 662 F. Supp.2d at 1184 (internal citations and quotations omitted). Here, though, the previously announced trial strategy stayed the same: attorney Pori told petitioner's jury that it had before it a case of mistaken identity, and that is what he put on. Furthermore, Madrigal's reference to "unforeseeable events" appears to have been part of its inquiry into counsel's conduct in the absence of anything else explaining the turn

---

[10] Dr. Shomer appears to have been the one who first worried that his own stellar testimony might be "ruined" by a poor alibi witness. While there may have been something of a self-serving ring in Dr. Shomer's advice not to put Thompson on the witness stand, there is no evidence suggesting that the advice was unreasonable, and according to Pori it was based on Dr. Shomer's own experience as an expert witness. It was reasonable for counsel to consider such information. As noted above, attorney Pori conceded to petitioner's habeas counsel at the evidentiary hearing that he could have had a conversation about the value of the alibi testimony with Dr. Shomer before trial, implying that he might have avoided mentioning Thompson altogether if he had discussed the issue in advance with Dr. Shomer. Petitioner's current counsel makes a fair implication, but, even if it was an oversight or omission not to clear Thompson's expected testimony with Dr. Shomer prior to the commencement of trial, that does not come close to sinking attorney Pori's performance to the level of a Strickland violation. Moreover, it was just as conceivable that Dr. Shomer could have proved a poor expert witness at trial, leaving nothing behind that Thompson could then "ruin" with his alibi testimony.

in strategy of the defense. The court in Madrigal found that the defense attorney's explanations for his conduct were contradictory and not believable. It concluded, similar to the court in Moore, that without a credible account from the attorney, there was no reasonable explanation for why defense counsel failed to call his client to the stand. Id. at 1183. This case is clearly distinguishable: this court has heard a credible and reasonable account from defense counsel regarding his questioned decision and the basis therefore.[11]

The court in Madrigal also noted, in assessing the question of prejudice to the defendant, that the evidence against him had been "weak." Id. at 1185. It found that "[i]n a borderline case, such as this one, 'even a relatively small error is likely to tilt the decisional scales.'" Id. (quoting Ouber, 293 F.3d at 33).[12] The court observes that determining prejudice in this case would be difficult, but attorney Pori's reasons for deciding against calling Thompson to testify at trial obviate the need for that inquiry. Here, defense counsel's capable performance at trial on cross-examination and in presenting a solid defense helped make this, apparently, "a

/////

---

[11] This court addresses the decision in Madrigal extensively mainly out of concern that it cited the case in its previous order granting an evidentiary hearing in this case and because Madrigal might be interpreted as stating a narrow standard that only some development during a trial that was not reasonably predictable justifies a decision to not follow through on a representation made in opening statement. That interpretation would not be consistent with Strickland's deferential guidelines and presumption that a decision was within the wide range of professional assistance. In any event, the court in Madrigal stated only that when there are no unforeseeable events to explain the decision, "the attorney's broken promise may be unreasonable." 662 F. Supp.2d at 1184 (emphasis added).

[12] Chief Judge Alex Kozinski, sitting by designation in this court, found something similar in Williams v. Woodford, 859 F. Supp.2d 1154 (E.D. Cal.2012), which the court also referenced as a "broken promises" case in its previous order. (See Order filed Dec. 3, 2012 (Doc No. 28) at 50-51.) There, the broken promises were "prejudicial not only because of their harm but because of just how close a case this was." Id. at 1172. Unlike this case, though, Williams was close in spite of defense counsel's performance, not in large part because of it. Suffice it to say that Williams is distinguishable for its list of egregious omissions by defense counsel in that case, including this one: "for a lawyer to come to the day of trial without ever having discussed the substance of the case with his own client betrays a shocking degree of neglect on counsel's part." Id. at 1165. The parade of constitutional violations in Williams meant that "[b]y the time the trial was over, counsel had given the jury no alibi, no testimony, no evidence – just broken promises." Id. at 1174. Nothing of the sort happened here.

borderline case." That performance can hardly stand as the predicate for a finding of prejudice, especially given Strickland's broad deference to counsel's decisions.

"[T]he court should keep in mind that counsel's function ... is to make the adversarial testing process work in the particular case." Strickland, 466 U.S. at 690. Here, the court cannot say that under the circumstances attorney Pori's decision not to call Thompson despite mentioning him in his opening statement to the jury was an unreasonable decision that rendered him ineffective in his function as advocate for his client and adversary to the prosecution. There was no Strickland violation. Therefore, petitioner is not entitled to federal habeas relief with respect to this aspect of his ineffective assistance of counsel claim.[13]

Accordingly, IT IS HEREBY ORDERED that the petition for writ of habeas corpus is denied and that this case be closed.

DATED: May 17, 2013.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

dad1.habeas
cole0020.order.wpd

---

[13] The court previously denied petitioner's application for federal habeas relief with respect to the remainder of his claims. (Order filed Dec. 3, 2012 (Doc. No. 28).)